## In re CHICAGO, R. I. & P. RY. CO.
### STATE OF TEXAS v. BROWN et al.
No. 9540.

Circuit Court of Appeals, Seventh Circuit.
June 2, 1948.

Rehearing Denied June 29, 1948.

Price Daniel, Atty. Gen., of Texas, and C. K. Richards, Asst. Atty. Gen., of Texas, for appellant.

Kenneth F. Burgess, Ray Garrett, George Ragland, Jr., W. F. Peter and Robert Diller, all of Chicago, Ill. (Sidley, Austin, Burgess & Harper, of Chicago, Ill., of counsel), for appellees.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This is an epilogue to what well might have been thought were the completed annals of the reorganization of the Chicago, Rock Island and Pacific Railway Company under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. The original petition was approved June 7, 1933. Litigation challenging the validity of the Act and the jurisdiction of the bankruptcy court terminated April 1, 1935 in a decision of the Supreme Court affirming this court's judgment in 7 Cir., 72 F.2d 443. Continental Bank v. Rock Island Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. During the ensuing thirteen years many and varied controversies have arisen and been dis-

posed of as shown by reported decisions in 257 I.C.C. 307; Chicago, R. I. & P. Ry. Co. v. Fleming, 7 Cir., 157 F.2d 241; 329 U.S. 780, 67 S.Ct. 201, 91 L.Ed. 669; In re Chicago R. I. & P. Ry. Co., 8 Cir., 160 F.2d 942; In re Chicago R. I. & P. Ry. Co., 7 Cir., 162 F.2d 257; Chase National Bank of the City of N. Y. v. Cheston, 332 U.S. 793, 68 S.Ct. 21; Chase National Bank of the City of N. Y. v. Cheston, 332 U.S. 826, 68 S.Ct. 163. Specifically, this is an appeal from a final decree carrying into consummation the previously approved and confirmed plan of reorganization of the debtor and its subsidiaries, including the Chicago, Rock Island and Gulf Railway Company, a Texas corporation, wholly owned by the principal debtor, approved by the District Court June 15, 1945.

Intervenor appellant, the State of Texas, in its attack upon the consummation order seeks to go back and review the validity of the plan originally approved June 15, 1945 upon the premise that that plan was bound to comply with the provisions of Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, and fails to do so. It contends that it was essential to valid action by the District Court that the Commerce Commission make a finding that continuance of the corporate existence of the Gulf Company would constitute an undue burden upon interstate commerce; that the failure of the Commission to consider the intervenor's objections to the plan at the hearing on the consummation application constituted a denial of due process of law, depriving the court of jurisdiction to enter its final order; that the order violates Sections 3 and 8 of Article X of the Constitution of Texas, Vernon's Ann.St., and the statutes of that state; and that the amendment of the application of the reorganization managers to the Commerce Commission for authority to the reorganized company to complete the acquisition of properties, issue securities and assume obligations, having been allowed without notice to the State of Texas, deprived the court of jurisdiction to enter the final decree of consummation.

We have no doubt, indeed, we understand that appellant admits that, under the repeated decisions of the Supreme Court, the most recent of which are Seaboard Air Line Railway Company v. Daniels, 333 U.S. 118, 68 S.Ct. 426, and Schwabacher, et al. v. U. S., et al., 68 S.Ct. 958, 963, the Commerce Commission has, under the Constitution and laws of the United States, the power, the duty, "to control rate and capital structures, physical make-up and relations between carriers, in the light of the public interest in an efficient national transportation system," "[the] laws of any State to the Contrary notwithstanding." This authority exists irrespective of whether the Commission acts in pursuance of its power under the Interstate Commerce Act, or under the Acts relating to bankruptcy, for bankruptcy administration, including reorganization, is, under the Constitution, equally a paramount national function. Continental Bank v. Rock Island Railway, 294 U.S. 648, 55 S.Ct. 595, 79 L. Ed. 1110. It is immaterial that the exercise of either power conflicts with state enactments.

It follows, therefore, that we are concerned only with the contention that the State of Texas has been deprived of due process of law in the alleged failure of the Commission either to find a fact essential to the exercise of its power or to afford the state a hearing upon the amendment of the application of the reorganization managers for approval of their suggested consummation of the plan.

It may be helpful to refer to some of the past history of the reorganization of this debtor, concerning which, some fifteen years ago, in Continental Bank v. Rock Island Railway, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, the Supreme Court commented that the doubts having been removed, the proceeding should go forward "to completion without further delay" and that it was the duty of the court and the Interstate Commerce Commission to see that it was carried forward with "the highest degree of diligence."

On May 17, 1932, prior to bankruptcy, the Rock Island and its subsidiary corporations filed an application with the Commission for authority under Section 5 of the Interstate Commerce Act to consolidate their properties in one unified ownership, management and operation. On June 7,

1933, the reorganization proceedings having been instituted, the bankruptcy court authorized continuation of prosecution of the application then still pending before the Commission. On August 9, 1933, the Commission approved the application (193 I.C.C. 395), without prejudice, however, to the reorganization proceedings. It found that unification of ownership and operation in a single corporation was clearly in the public interest.

Though consolidation under Section 5 was not carried out, in the course of that proceeding, at a hearing held in Texas, the Assistant Attorney General of the State advised the Commission that the state desired to protest the application insofar as it affected the Texas corporation. In this respect, the Commission commented that, notwithstanding this communication, no formal protest had been made by the State; that, though the Texas constitution and statutes require the maintenance of separate local corporate organizations of railroads operating within the state, Congress, in framing the statute, had empowered the Commission to act notwithstanding such state laws. Thus it is clear, that, in this proceeding under Section 5 of the Interstate Commerce Act, prosecuted by permission of the District Court in which the bankruptcy proceedings were pending, the state had ample opportunity to be heard and failed to avail itself of such right.

The Gulf Company became a party to the reorganization proceedings, as a subsidiary. Trustees were appointed for both the principal debtor and its subsidiaries. On December 31, 1935, the trustees of both the principal debtor and its subsidiaries applied to the Commission under Section 5(4) of the Interstate Commerce Act for authority to merge operations of the properties in the several estates and to direct the trustees of the Rock Island to operate all the various properties as a unit, crediting the Gulf Company with such per cent of the combined net operating income as the Commission should determine to be fair. The State of Texas intervened in this proceeding. The Commission in its report, discussed the savings that would result from the merged operations, but concluded that

the prayer of the petition was not within the statute.

On November 8, 1937, the Gulf trustees applied to the Commission under Section 5(4) for authority to lease the properties of their estate to the Rock Island trustees until termination of the reorganization proceedings. The Rock Island trustees similarly applied for authority to enter into and accept the lease. Again the State of Texas intervened. The application was approved. The Commission found that the proposed lease, upon the terms and conditions proposed, would be in harmony with and in furtherance of its plan for consolidation of railroad properties in general. The Commission did not overlook the conflicting state statutes but commented that in Texas v. U. S., 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402, the Supreme Court had held that: "It was within the Commission's power to approve the lease of a line of railroad in Texas to a railroad corporation not incorporated under the laws of Texas even though such approval would result in the removal from the State of Texas of various offices and shops of the lessor." The Commission added: "* * * Counsel for the State and the city of Fort Worth suggest that the court did not hold that we may not consider State laws in determining whether or not a proposal of this character is in the public interest, and contend, in effect, that depriving the State of effective control of the Gulf, which will be the result of approval of the lease, is not in the public interest for the reason that such approval would be contrary to the views or desires of the citizens of Texas as expressed in their laws. This contention would be entitled to serious consideration if, in the disposition of the lease, herein involved, we could legally disregard lines of railroad operated by the Rock Island in 13 other States." An appeal followed and, eventually, in U.S. v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 255, 84 L.Ed. 208, the court held that the Commission had authority under Section 5(4) to approve and authorize the lease under prescribed conditions. The court said: "* * * we do not doubt that Congress, by its choice of the broad language of Sec. 5(4) (b) intended at least to permit the Commission, in authorizing railroad consolidations and

leases, to impose upon carriers conditions related, as these are, to the public policy of the Transportation Act to facilitate railroad consolidation, and to promote the adequacy and efficiency of the railroad transportation system."

In pursuance of this order, within the ambit of which are included all the substantive rights asserted in this appeal, properties of the Texas corporation were leased to the trustees of the principal debtor in September 1939, and operated by them until the reorganized company took possession, employing the former employees of the Texas corporation as their own employees. These, in turn, when the reorganized company took over on January 1, 1948, became employees of the latter.

Later the plan for reorganization was presented to the Commission which approved it on May 1, 1944. The District Court approved on June 15, 1945. The order of approval was affirmed by this court in 7 Cir., 157 F.2d 241. Certiorari was denied, 329 U.S. 780, 67 S.Ct. 201, 91 L.Ed. 669. The plan was later confirmed by the District Court in orders entered May 23, 1947 and June 26, 1947, pursuant to the instructions of this court in 160 F.2d 942 and 162 F.2d 257, as to which the Supreme Court denied certiorari and rehearing.

The plan provides, as to merger, that all properties be transferred to the reorganized company; that it be left to the discretion of the reorganization managers as to whether a new company should be formed; that the reorganized company be invested with all the property of the debtor and the other subsidiaries, including the Gulf Company, and that, thereupon, the subsidiaries be dissolved. In approving the plan in 1944 the Commission found that it meets the requirements of subsection b of Section 77 of the Bankruptcy Act; is fair and equitable; affords due recognition of the rights of each class of creditors and stockholders; conforms to the requirements of the law regarding classification of the various creditors and stockholders; meets the requirements of subsection e of Section 77 and is compatible with the public interest. These findings meet fully the requirements of Section 77d. The findings of the District Court in its order of June 15, 1945, approv-

ing the plan, likewise complied fully with the requirements of Section 77e governing proceedings in the bankruptcy court.

Thus, in various phases and at different stages, the merger of the debtor corporation and its subsidiaries, the consolidation of the subsidiaries with the principal debtor, and the reorganization of the debtor and its subsidiaries have been contemplated and considered and disposed of in various proceedings instituted and conducted over a period of fifteen years. From the beginning, the State of Texas has had notice. Thus, in 1940, the Commission advised the Governor of Texas of the pendency of the proceedings before it and sent to him a copy of its order in 242 I.C.C. 455, in which it commented that, under the proposal, the reorganized company would own all the property of the debtor and its subsidiaries including the Gulf Railroad Company. So far as the record discloses, the State took no action in response to this notice, although it had full notice that it was proposed to take over the Gulf properties, contrary, as it claimed, to the conflicting state statutes.

It is apparent, therefore, that the State of Texas might have participated, had it seen fit, in any of the numerous hearings on the plan both before and after November, 1940; that it could have presented its objections to the plan prior to its approval by the Commission in 1944 and by the Court in 1945 and prior to its confirmation by the court on May 23, 1947.

■■ Yet the state did not appear formally in the reorganization proceedings until, as amicus curiae, on November 12, 1947, it objected to the plan, which had previously been approved and confirmed and approval of which it had never previously contested, and then only in a proceeding which had to do not at all with the terms of the plan. In other words, it failed utterly, either upon approval or upon confirmation, to present any objection to the plan after it had been notified of the nature and contemplated purposes of the plan, and then sought in November, 1947, to object to the plan, after the time for objection to approval had passed and after the time for confirmation had passed. To our minds, this is a far cry from deprivation of

due process. The attempt to object long after the plan had been approved and long after it had been confirmed, is too tardy an application to deserve consideration and one which we think is not contemplated at that stage under the Bankruptcy Act.

■ True, Texas did file a protest with the Commission within fifteen days after December 8, 1947, claiming that the proposed transfer was not authorized by Section 77 of the Bankruptcy Act and was contrary to Texas law. But that, we think, was not the proper time or place. Upon that the Commission said: "These objections to the confirmed plan may not be entertained by us in the present proceeding. In the pending application the reorganization managers request authorization under Section 77, sub. f of the Bankruptcy Act, among other things, for the reorganized Chicago, Rock Island & Gulf, a subsidiary debtor in these proceedings. By the provisions of that section we are directed, *without further proceedings,* (our italics), to grant the authorization requested to the extent contemplated by the plan and not inconsistent with the provisions and purposes of the Interstate Commerce Act. Acquisition by the reorganized company of the properties of the Chicago, Rock Island & Gulf concededly is contemplated by the confirmed plan and is not, in our opinion, inconsistent with Section 5 of any other provision or purpose of the Interstate Commerce Act.

"Hearings have been held on the plan by this Commission at various times over a period beginning on October 6, 1936. Copies of the proposals and notice of the earlier hearings were duly sent to the Governor of the State of Texas. The State has never intervened in the proceedings nor made any representations to us with respect to the proposals. We conclude that we should grant the authorizations requested without further proceedings. * * * The reasons for the stated acquisitions are fully set forth in the prior reports on the plan. That the acquisitions will result in adequate transportation service to the public and will not be contrary to or inconsistent with the public interest is implicit in the Commission's findings approving the plan."

The Commission thereupon denied the request of the State of Texas for modification of the plan or the opportunity to be heard further, and approved the proposed consummation presented by the managers. After the consummation order had been entered in the District Court, a request for a stay was denied by both the District Court and this Court.

■ We have, perhaps unnecessarily, included this rather prolix statement of previous events only because of the claim of lack of due process of law. What we are concerned with here primarily is determination of the power of the Interstate Commerce Commission and the District Court in reorganization under Section 77 of the Bankruptcy Act. Section 77, sub. a provides that upon approval of a petition for reorganization of a railroad, the court shall have exclusive jurisdiction of the debtor and its property wherever located. Subsidiaries of the debtors may file petitions in the same proceedings, and, thereupon, the court has the same jurisdiction with respect to them and their property as it has with regard to the principal debtor. These provisions are valid under Section 8, cl. 4 of Article I of the Constitution, giving to Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States, Continental Bank v. Chicago, Rock Island & Pacific Railway Company, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. Consequently the terms of the plan of reorganization for the debtors and the subsidiaries are to be tested by the provisions of Section 77. Under that Act, after approval and confirmation of the plan, it is necessary to obtain authority for issuance of securities and transfer of property and for assumption of liabilities in consummation of the plan. Section 77, sub. f requires the Commission to grant authority, "without further proceedings," for the transfer of any property to the extent contemplated by the plan.

■ But in the present proceeding the Commission was not passing upon the propriety of the plan. This it had done when it first approved the plan in October, 1944. The only duty of the Commission, on the managers' application, was to assure itself that the transfer and other proposed

transactions were those contemplated by the approved and confirmed plan and were not inconsistent with the Interstate Commerce Act. In that situation we think that the Commission was entirely justified in declining to entertain the Texas objections which were, in effect, an effort to change the terms of an approved and confirmed plan, to which the State had never objected.

■ But even had the objections been presented at an opportune stage of the proceeding, nothing now urged would afford any basis for relief. So far as this record discloses, the plan had been formulated, approved and confirmed in full accord with the provisions of the pertinent Bankruptcy sections. The court has authority to put into effect and carry out the plan approved and confirmed in proper manner, notwithstanding the laws of any state or the decision or order of any state to the contrary. The fact that the plan may infringe upon the provisions of the Texas constitution and laws is wholly immaterial against bankruptcy jurisdiction, In re N.Y., N. H. & H. R. Co., and 2 Cir., 1945, 147 F.2d 40, 51, certiorari denied 325 U.S. 884, 65 S.Ct. 1577, 89 L.Ed. 1999; Texas v. U. S., 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402; In re Missouri Pacific R. Co., D.C., 39 F.Supp. 436, 438; Seaboard Air Line R. Co. v. Daniel, supra. In other words, nothing now urged in respect to infringement of the laws of Texas would, at any time, have afforded the Commission any power to grant the relief the state is insisting it should have.

■ The State suggests that the only terms and conditions upon which the reorganization could be approved by the Commission are fixed by Section 5 of the Interstate Commerce Act. Unfortunately, however, for this contention, this is a reorganization proceedings and the controlling terms and conditions are fixed by Section 77 of the Bankruptcy Act. That Act authorizes the Commission to act subject only to the condition that the plan shall be compatible with the public interest and not inconsistent with the purposes of the Interstate Commerce Act. On the other hand, Section 5(2) and (11), 49 U.S.C.A. §§ 5(2) and (11), relates to consolidation and merg-

er wholly outside of the Bankruptcy Act, in the course of ordinary procedure, and the Commission has power to act if it finds the proposed transactions are within the scope of Section 5(2) and (11) and will be consistent with the public interest. However, we think the requisite findings under the two acts are equivalent. Consistent with the public interest" is the same as "compatible with the public interest." Apparently the Commission complied with both statutes.

■ It is clear, however, that we are not now dealing with a proceeding under Section 5 of the Interstate Commerce Act, but with one under Section 77 of the Bankruptcy Act, and we find nothing in the plan or in the proceedings or offered by appellant to impeach the findings of the Commission that the plan is "compatible with the public interest" and not inconsistent with the Interstate Commerce Act. The Commission has made every effort to follow the requirements and has complied with all the provisions of the Bankruptcy Act, and none of its findings is inconsistent with the powers of the Commission under the Interstate Commerce Act. The findings upon approval of the plan are almost identical with those involved in Seaboard Air Lines v. Daniels, supra, a proceeding under Section 5. The Supreme Court approved the order entered there, and since the findings here are the equivalent of the findings there, there is no basis for holding that the order entered in the bankruptcy proceedings is anywise inconsistent with Section 5 or other provisions of the Interstate Commerce Act or the Bankruptcy Act.

■ Nor do we find any ground for complaint of the allowance of the amendment of the application of the managers. Appellant makes no showing that the amendment included anything which, in the slightest degree, prejudiced or could have possibly affected the rights of the State of Texas. Furthermore, the Bankruptcy Act directs the Commission to act "without further proceedings." It did so. And even had the State been present at the time and urged all that it has presented to the District Court and this Court, the result necessarily would have been the same.

The order is affirmed.