# INTERNATIONAL & GREAT NORTHERN RAIL-WAY COMPANY ET AL. v. ANDERSON COUNTY ET AL.

ERROR TO THE COURT OF CIVIL APPEALS, SIXTH SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 243.   Argued March 25, 26, 1918.—Decided April 15, 1918.

With respect to a railroad within its territory, a state court has juris-diction to decide whether the owner is under a public duty to main-tain the offices and shops at a particular place, even though it were assumed, as a rule of decision, that a foreclosure and confirmed sale in a federal court conferred immunity from the obligation which that court alone could withdraw.

Foreclosure and sale of a railroad in a federal court will not relieve the purchaser from a contractual or statutory duty, which rested on its predecessors under the state law, to maintain offices and shops at a particular place, if the state law holds the obligation indelible by foreclosure.

The prohibition against removal of offices and shops located by con-tract within a county in consideration of county bond aid extends, under the Texas Office-Shops Act of 1889, to the successor by mort-gage foreclosure of the contracting railroad.

In its provision that offices and shops shall be at the place named in the charter, and if no certain place is there named then at such place as the company shall have contracted to locate them, etc., this statute does not intend that a valid contract for location may be evaded by a purchasing company by naming another place in its charter filed under a general law.

*Semble*, that a contract to maintain the offices and shops of a railroad at a particular place survives mortgage foreclosure and sale of the railroad where the purchaser succeeds to the mortgagor's franchise to be a corporation.

*Semble*, that, generally speaking, a state legislature, dealing with a local railroad corporation, has power to fix the place of its domicile and principal offices.

A corporation, organized under general laws expressly declaring that charters thereunder should be subject to provisions and limitations imposed by law, while another act prohibited changing locations of railroad offices and shops in certain cases, purchased a railroad under

proceedings foreclosing a mortgage. *Held*, that whether or not the prohibition would have been constitutional as applied to the company's predecessors, it was a condition of its incorporation of which it could not complain.

In so far as it depends upon the testimony, the verdict of a jury, upon an issue requested by the complaining party, finding that a state regulation as to location of railway offices and shops does not burden interstate commerce, will be accepted.

*Held*, that the burden, if any, in this case, upon interstate commerce, due to a state law forbidding change of location of a railway's offices and shops, is indirect, and that the state power was not exceeded.

A decree of injunction which properly will be operative until the law is changed may properly be expressed as perpetual.

174 S. W. Rep. 305, affirmed.

THE case is stated in the opinion.

*Mr. H. M. Garwood* and *Mr. Samuel B. Dabney,* with whom *Mr. F. A. Williams, Mr. N. A. Stedman* and *Mr. Frank Andrews* were on the briefs, for plaintiffs in error:

The Circuit Court for the Northern District of Texas had exclusive jurisdiction, reserved in the foreclosure decree of May, 1910, under which the properties were sold out, and the state court had no jurisdiction.

This litigation is in conflict with the right, title, privileges and immunities protected by the decrees of the Circuit Court for the Western District of Texas entered on foreclosures of four mortgages in 1879, and by the decree of the Circuit Court for the Northern District of Texas, entered on foreclosure in May, 1910.

The state court had no power in this collateral proceeding to declare the three decrees of 1879 not to be *bona fide,* and to be fraudulent.

The mortgage of the International & Great Northern Railroad Company of 1881 was foreclosed in 1910, and included all charter rights, and on foreclosure sale all the properties were bought in and transferred to the International & Great Northern Railway Company, chartered

in 1911. Therefore, the Office-Shops Act of 1889, here
relied on as giving security for the alleged contracts of
1872–1875, could not secure and enlarge those contracts
without violating the obligation of the mortgage contract
of 1881; which it is submitted has been violated by the
decree here under review, contrary to that provision of
the Constitution prohibiting any State from passing a
law violating the obligation of a contract.

The Office-Shops Act of 1889, as construed and herein
enforced, conflicts with the contract clause also because
the purely personal alleged contracts of 1872–1875 sued
on are extended and secured, and their obligations changed,
by that statute.

The Office-Shops Act, as construed and enforced herein,
cannot be justified as a legitimate exercise of the police
power of the State.

Under the law existing in 1879, and anterior to that
time, and at the time of the foreclosure of the mortgages
in 1879 and the selling out of the property thereunder,
not only tangibles were sold, but also there were mort-
gaged, foreclosed and sold all of the charters of the Inter-
national & Great Northern Railroad Company, whereby
the alleged contracts herein sued on alleged to have been
created in 1872–1875 (then personal, and personal at the
time of the foreclosure of 1879), were by the foreclosures
and sales eliminated as against the new railroad, and could
not by the Act of 1889 be extended and secured against
the properties of the railroad without violation of the ob-
ligations of the foreclosed mortgage contracts, and with-
out denial of the rights, titles, privileges and immunities
secured by the decrees of the United States court, and
after the lapse of 35 years those decrees could not, in the
state court, be declared fraudulent, even if there had been
evidence of fraud.

The Act of 1889, as herein construed, to extend and to
secure as extended the alleged contracts of 1872–1875,

by a perpetual lien and servitude, deprives plaintiff in error of its property without due process of law, contrary to the Fourteenth Amendment; and in attempting to compel plaintiff in error (an interstate carrier) to forever maintain its machine shops, roundhouses and general offices at Palestine, places a burden upon interstate commerce, in violation of par. 4, § 8, Art. 1, of the Constitution.

*Mr. F. D. McKenney* and *Mr. Thomas B. Greenwood,* with whom *Mr. A. G. Greenwood, Mr. W. C. Campbell* and *Mr. Jno. C. Box* were on the briefs, for defendants in error:

This suit was not within any reservations of exclusive jurisdiction in the decree of foreclosure, because it involved merely the enforcement of a continuing statutory duty of plaintiff in error.

The Circuit Court for the Northern District of Texas completely discharged the railroad and franchises of the sold-out company from its possession, custody and control, actual and constructive, prior to the institution of this suit.

The Office-Shops Act came within the police power of the State as a valid regulation, for the promotion of the public interest, of franchises granted by the State for the operation of railroads, and it must be obeyed by plaintiff in error both as the purchaser of a railroad and its franchises, under foreclosure of a mortgage antedating the statute, and as a corporation organized under a law which expressly imposed upon it obedience to the statute.

The Court of Civil Appeals having determined as a pure question of fact, not open to review here, that the properties and franchises of the International & Great Northern Railroad Company were sold in 1879 to mere trustees for the debtor corporation, such sale could not discharge the personal obligation of the locative contracts, and in no event could such sale affect the statutory pro-

hibition against changing the general offices and shops from Palestine.

The statute is not void as a direct regulation of interstate commerce.

The record presents no substantial federal question for decision by this court, and the concurring judgments of the state courts are rested upon nonfederal grounds broad enough to sustain them. The entire matter is one of purely local concern, dependent for solution upon the construction and application of state laws.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the defendants in error to prevent the Railroad Company, plaintiff in error, from moving its machine shops, roundhouses, and general offices from the City of Palestine and from maintaining any of them elsewhere. An injunction was issued as prayed; the judgment was affirmed by the Court of Civil Appeals, 174 S. W. Rep. 305, in accordance with intimations of the Supreme Court of Texas at an earlier stage, 106 Texas, 60, and an application to the latter Court for a writ of error was refused. The case is brought here upon voluminous assignments of error which may be summed up in the propositions that the state court was without jurisdiction because of certain foreclosures in the Courts of the United States, that the judgment disregarded rights secured by the decrees of those Courts, and that it gave effect to a statute which as applied burdened interstate commerce, impaired the obligation of contracts, etc., and was contrary to Article I, §§ 8 and 10, and to the Fourteenth Amendment of the Constitution of the United States.

The facts begin with the predecessors of the plaintiffs in error. The Houston and Great Northern Railroad Company, a local road, was chartered by a special Act

on October 26, 1866. About March 15, 1872, it contracted
with the citizens of Palestine in the County of Anderson
in consideration of the issue of bonds by the county to
maintain its general offices, machine shops and round-
houses at that place. The International Railroad Com-
pany was chartered in like manner on August 5, 1870.
In 1872 the two companies agreed to consolidate and this
agreement was ratified by the stockholders of each in
1873. A special Act of April 24, 1874, authorized the
consolidated company, known as the International and
Great Northern Railroad Company, to issue bonds se-
cured by mortgage and provided that all acts theretofore
done in the name of either of the companies should be
of the same binding effect upon the new one that they
were upon the old. In 1875 the new company in consid-
eration of the erection of houses for its employees re-
newed the contract of the Houston & Great Northern
and at about the same time it resolved that its general
offices should be removed to Palestine. We see no reason
for reopening the findings below that the alleged contracts
were made. The offices were removed and there they
remained, subject to some immaterial interruption, until
1911. The machine shops and roundhouses are still there.
Each of the two constituent companies had executed
mortgages before the date of the original agreement of
the Houston & Great Northern and each executed an-
other before the contract of the consolidated company
in 1875. These mortgages were all foreclosed in 1879
and the property conveyed to a corporation, still called
the International & Great Northern Railroad Company,
by a deed that conveyed all the franchises and chartered
powers of the original roads. The foreclosure is one fact
relied upon for the defence.

The purchasing company in its turn executed mort-
gages, one of which, including, like the earlier ones that
we have mentioned, the franchise to be a corporation,

dated in 1881, is the source of the plaintiff in error's title, by a foreclosure in 1910–1911. Before this last fore-closure took place two statutes were enacted in Texas that are important. The first, known as the Office-Shops Act, approved March 27, 1889, c. 106; Rev. Civil Stats. 1911, § 6423, provided that every railroad company char-tered by the State or owning or operating a line within the State should permanently maintain its general offices at the place named in its charter, and if no certain place were named there, at such place as it should have con-tracted to locate them, otherwise at such place as it should designate; also that it should maintain its ma-chine shops and roundhouses at the place where it had contracted to keep them, and that if the offices, shops or roundhouses were located on the line of a railroad in a county that had aided such railroad by an issue of bonds in consideration of the location being made, then such location should not be changed; "and this shall apply as well to a railroad that may have been consolidated with another as to those which have maintained their original organization." A violation of the act entails forfeiture of the charter, with a penalty of $5,000 a day for every day of violation. Rev. Stats., § 6425. An act approved two days later, March 29, 1889, with provisos that no rights should be acquired inconsistent with the present constitution, that the main track once constructed and operated should not be removed, &c., authorized pur-chasers of sold-out railroads to form a new corporation, whereas previously the purchaser had continued the franchises of the old under the original grant. A law of September 1, 1910, c. 4, further emphasized the change of policy by excluding a succession to the old charter un-less coupled with an acceptance of certain liabilities, and providing that the charter should pass subject to the provisions and limitations imposed and to be imposed by law. Rev. Stats., § 6625.

The mortgage of 1881 last mentioned was foreclosed by proceedings in the Circuit Court of the United States. A decree of May 10, 1910, while reserving jurisdiction of the property, ordered a sale, which, after postponements, took place on June 13, 1911, and was confirmed the next day. On September 25, 1911, the railroad and franchises were finally discharged from the possession and control of the receiver and the Court. Before that date the plaintiff in error was incorporated under the Act of 1889 and general laws and took the conveyances under the foreclosure decree. Within the time allowed it had filed in Court a repudiation of any agreement on the part of any of its predecessors to maintain their offices and shops at Palestine, and later gave notice to that effect to officials of Anderson County and Palestine. The articles of incorporation fixed the place for the general offices as Houston.

The railway company denies the jurisdiction of the state court and sets up that the court of the last foreclosure is the only proper forum. But a decree of foreclosure does not render the purchaser and property foreclosed sacrosanct. The Circuit Court had finished the case and had given up possession and control before this suit was brought. *Shields* v. *Coleman*, 157 U. S. 168, 178, 179. *Wabash R. R. Co.* v. *Adelbert College*, 208 U. S. 38, 55. Even if it were true that the foreclosure sale and order carried an immunity from the present demand that the railway was entitled to set up, in the absence of action on the part of the Court of the United States, it would not take away the power of the state court to decide as to the existence of an alleged public duty on the part of a railroad within the territory where the court sat. *Ricaud* v. *American Metal Co., ante,* 304.

But the foreclosures did not have the supposed effect. They no more removed all human restrictions than they excluded the authority of ordinary courts. Suppose

that a special act incorporating the mortgagor had provided in terms evidently intended to reach beyond foreclosure that the general offices were to remain forever at Palestine, it hardly would be argued, and certainly would not be argued here or in Texas with success, that the requirement could be touched by a decree. But if the law made that requirement, it hardly matters whether the restriction was imposed by charter or otherwise or whether the remote reason for it was a contract or a general notion of public policy. The state courts hold that when the law on any ground fixes the place of the offices and shops the obligation is indelible by foreclosure. We see no reason why their decision should not prevail.

It is contended that the Office-Shops Act of 1889 does not touch the plaintiff in error by its terms and that if it be construed to do so it is unconstitutional. On the construction of the act it seems to us that there can be no doubt. It is true that the provision requiring the general offices to be maintained at the place where the railroad had contracted to keep them is conditioned on no place being named in the charter, but of course this does not mean that articles framed under a general law can get rid of contracts that otherwise would bind, and in our opinion it is equally plain that no distinction was intended between the contract by the present road and one by its predecessor, if the office and shops "are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made." "Then," the statute says, "said location shall not be changed." The construction of the act by the state court is beyond criticism upon this point.

It is said that the act so construed would infringe the constitutional rights of the parties to the mortgage of 1881, which the plaintiff in error took by foreclosure.

But it will be. remembered that the mortgagor under the law then in force merely had succeeded to the original contractors, freed from their unsecured debts, no doubt, but, it well might be held, not freed from the obligati n in question. Also it was found by the Courts below that the sale under which the mortgagor took in 1879 was not a *bona fide* sale, and so was not a sale that put the purchaser in a position other than that of mortgagor. Apart from these considerations we should be slow to say that it was not within the power of a state legislature dealing with a corporation of the State to fix the place of its domicile and principal offices, in the absence of other facts than those appearing in this case. But furthermore when the Office-Shops Act was on the statute book the plaintiff in error took out a charter under general laws that expressly subjected it to the limitations imposed by law. It is said that this does not make the plaintiff in error adopt an otherwise unconstitutional statute. But even if, contrary to what we have intimated, the act could not otherwise have affected those particular corporations, it was a law upon the statute books and was far from a mere nullity, and if it was made a condition of incorporation that this restriction should be accepted, the plaintiff in error cannot complain. *Interstate Consolidated Street Ry. Co.* v. *Massachusetts*, 207 U. S. 79. We agree with the state courts that the condition was imposed.

The acceptance of the charter by the plaintiff in error disposed of every constitutional objection but one. It is said that the restriction imposes a burden upon commerce among the States, since the road concerned has expanded and now is largely engaged in such commerce. The jury found that it imposed no such burden, upon an issue submitted to them in accordance with the desire of the plaintiff in error, although not in the form that it desired. So far as the question depended upon

the testimony adduced the verdict must be accepted, and although no doubt there might be cases in which this Court would pronounce for itself, irrespective of testimony, whether a burden was imposed, we are not prepared to say that in this instance the State has transcended its powers. The burden if any is indirect. Some complaint is made of the form of the judgment, as purporting to be perpetual. But the word perpetual adds nothing to a requirement that the office and shops should be maintained in Palestine. The requirement is perpetual until the law is changed. When and how it may be changed is not before us now. Other objections are urged and other details are adverted to in the very lengthy printed arguments, besides those with which we have dealt, but we deem it unnecessary to go farther. Upon the whole case we are of opinion that the judgment below should be affirmed.

*Judgment affirmed.*