## MERCANTILE TRUST CO. et al. v. BINFORD, Sheriff, et al.

(District Court, N. D. Texas, Dallas Division. June 25, 1925.)

No. 2501.

**1. Courts ⬤⇒490—Duty of state and federal courts to prevent unseemly conflicts of jurisdiction.**

Prevention of unseemly conflicts between federal and state courts is duty of judiciary of each jurisdiction, in so far as it is possible to do so without surrendering any jurisdiction that must be exercised.

**2. Courts ⬤⇒508(1)—Federal court may not restrain individual from prosecuting suit in state court, except to give effect to judgment or decree in case pending before it.**

Under Rev. St. § 720 (Comp. St. § 1242), federal court is without authority to enjoin individual from prosecuting suit in state court not relating to bankruptcy proceedings, except to give effect to its judgment or decree in case properly pending before it.

**3. Judgment ⬤⇒735 — Finding that claims against railroad in receivership were unsecured held binding on all parties, but not adjudication that claims were not current expenses.**

Finding of master in railroad receivership proceedings in federal court, that claims against railroad were unsecured, and not entitled to preference under six-months equity rule, approved by court, has force and effect of judgment, and such judgment is binding on all parties thereto in every forum, but is not adjudication that claims were not for current expenses, within Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 6624, 6625, requiring purchasers at such sales to pay current expenses accruing within two years.

**4. Railroads ⬤⇒196—State statute, requiring purchaser of railroad at receivership sale by federal court to pay current expenses as condition of reincorporating, held valid.**

Legislature had power to enact Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 6624, 6625, requiring purchaser of railroad at receivership sale by federal court, as condition to

reincorporating and doing business in Texas, to pay for "current expenses" of operation accruing within two years of sale, and statute was not antagonistic to adjudication by federal court that such expenses, though valid debts, were not secured or preferred claims under equity rule.

**5. Courts ⬤⇒500—Execution on judgment of state court, after receivership sale by federal court, held not interference with jurisdiction of federal court.**

Execution on judgment of state court rendered under Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 6624, 6625, for current operating expenses of railroad accruing within two years of receivership sale by federal court, held not interference by state court with jurisdiction of federal courts, though federal court reserved jurisdiction for purpose of disposition of claims.

**6. Courts ⬤⇒500—Mortgagee of railroad took mortgage subject to state statute, but was not deprived of right to be heard in state court.**

Mortgagee of railroad took mortgage subject to Vernon's Sayles' Ann. Civ. St. Tex. 1914, arts. 6624, 6625, requiring railroad to pay current operating expenses accruing within two years of receivership sale, at which it purchased, as condition to reincorporating and doing business within state; but such taking would not deprive it of right to be heard in state court, before that court could take from it any property rights.

In Equity. Suit by the Mercantile Trust Company and another against T. A. Binford, Sheriff of Harris County, Tex., and others. On plaintiffs' application for preliminary injunction. Injunction refused.

S. B. Dabney and Samuel Streetman, both of Houston, Tex., and R. A. Ritchie, of Dallas, Tex., for plaintiffs.

E. B. Robertson, of Fort Worth, Tex., Geo. L. Edwards, of Kansas City, Mo., Wm. T. Jones, of St. Louis, Mo., and John W. Brady, of Austin, Tex., for defendants.

ATWELL, District Judge. The complainants are the Mercantile Trust Company of New York, and the International-Great Northern Railway Company of Texas. The respondents are T. A. Binford, sheriff of Harris county, Tex., Concrete Investment Company, and National Bank of Commerce of St. Louis, Mo.

The pleadings disclose that the International & Great Northern Railroad Company was received by the United States Circuit Court, at Dallas, in February, 1908; that in November, 1908, a master in chancery was appointed, and by an order of reference he was directed to pass upon all claims, fix priorities and liens, and report his findings to the court. In 1908 the National Bank of Commerce of St. Louis, filed two interven-

tions—one for two $25,000 notes; the other covering approximately $53,000 overdrafts. It was alleged in each of these interventions that the funds represented by the respective obligations were advanced for the "current expenses" of operating the road. These interventions were referred to the master. He reported in 1912 that the debts were correct, but that they were unsecured; that is, that they had no "preference" under the six-months equity rule. This report of the master was approved by the District Court, which had, by the operation of the law, succeeded to the jurisdiction of the Circuit Court. From this approval no appeal was taken.

In 1913, the St. Louis bank assigned its claims to the Concrete Investment Company, one of the defendants herein, and that company brought a suit in a state district court under a statute of Texas which was passed in 1910, a part of which reads as follows:

"In case of any sale heretofore or hereafter made of the property and franchises of a railroad company within this state, the purchaser or purchasers thereof and associates, if any, shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the road so purchased, as if such road were the road intended to be constructed by the corporation; and, when such charter has been filed, the new corporation shall have the powers and privileges then conferred by the laws of this state upon chartered railroads, including the power to construct and extend: Provided, that, notwithstanding such incorporation, the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims for death and personal injuries sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for the current expenses of such operation, including labor, supplies and repairs: Provided, that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of such property."

This act in its entirety constitutes articles 6624 and 6625, Vernon's Sayles' Ann. Civ. St. Tex. 1914, and is popularly known as the "I. & G. N. bill." It was the result of a called session of the Legislature after the receivership and decree of foreclosure in the United States court. After the passage of this act the sale was postponed until June, 1911.

This suit the Concrete Investment Company litigated through all of the state courts successfully, and the judgment, which was affirmed by the highest courts of Texas, for the amount of the two interventions mentioned above, plus interest, aggregates at this time about $250,000. Upon this judgment execution was duly issued and the sheriff levied upon the railroad property "formerly owned by the I. & G. N. Railroad Company," worth, approximately, $25,000,-000. A temporary restraining order was granted, and made returnable to show cause why a preliminary injunction should not issue. A motion to dismiss was overruled.

When the United States District Court sold the received road in 1911, it reserved jurisdiction over claims, liens, and other proceedings that might affect the title to the property sold, in the following words: "It is further ordered, adjudged, and decreed that all questions not hereby disposed of, including the discharge of the receiver and the settlement of his accounts, and including the disposition of all claims heretofore filed herein, or hereafter to be so filed in accordance with the provisions of this decree, are hereby reserved for future adjudication; and the court reserves jurisdiction of this cause and of the property effected by this decree for the purpose of final disposition of all such questions and matters; and any party to this proceeding and any claimant whose claims have been or shall be so filed herein may apply to the court for further orders and directions at the foot of this decree."

The decree of foreclosure was entered in the United States court before the passage of the act of 1910. The International-Great Northern road, upon which the present levy is made, is probably largely the same property, but a new corporation, which bought under a foreclosure sale ordered by the United States District Court for the Southern District of Texas in the year 1922. This foreclosure was on a mortgage that was the result of the sale in the Northern district, in 1911. Neither the mortgage company making the loan, nor the present road, was a party to the state court suit. The state court suit was against the International & Great Northern Company which immediately bought under the 1911 sale.

The complainants contend that there are three irrefutable positions under which they

are entitled to injunctive relief: (a) The reservation of jurisdiction by the United States court. (b) Res adjudicata; that is, that the St. Louis bank claims had been adjudicated in the United States court, and that such adjudication was binding upon the same parties in the state court. (c) That the present railroad company and the mortgagee under whose foreclosure it acquired title have never had their day in court, and were not made defendants in the state court. Respondents maintain that this court has no jurisdiction to grant the relief prayed for; that a court of competent jurisdiction of the state has passed upon all of the questions raised in this suit.

[1] 1. The prevention of unseemly conflicts between the courts of the two jurisdictions is the duty of the judiciary of each, in so far as it is possible to do so without the surrender of any jurisdiction that must be exercised. Lewis v. Schrader (D. C.) 287 F. 893.

[2] The Congress, open-eyed to such dual nature of our government, provided that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." R. S. U. S. § 720 (Comp. St. § 1242). The method of enjoining proceedings in other tribunals has always, or nearly always, been by enjoining the parties, and therefore an injunction from a United States court to prohibit an individual from instituting or prosecuting a suit in a state court is within the mischief intended to be guarded against by the above statute. Central National Bank v. Stevens, 169 U. S. 461, 18 S. Ct. 403, 42 L. Ed. 807.

To this sweeping prohibition there has always been the exception, which is incident to the jurisdiction and life of the United States court, that, where a case is properly pending in a court of the United States, and that court has proceeded to judgment or decree, it may, if necessary to give effect thereto, enjoin parties from instituting or prosecuting actions in state courts. The complainants assert that they are the grantees of those who had a contract of purchase with the United States District Court for the Northern District of Texas, and that to permit the foreclosure of a lien out of the state court, ripening in the manner I have detailed, would be to imperil the integrity of a decree and judgment of the United States tribunal.

[3] Manifestly the defendant Concrete Investment Company, through its assignor, was in the United States court for the adjudication of the identical claims that subsequently became the body of its asserted claim in the state court. Manifestly the finding of the master that such claims were "unsecured," within the meaning of the equity rule, there being no showing of an equitable assignment, or of a diversion of funds, such as is requisite to give preference or priority thereunder, and the approval of such finding by the court, has the force and effect of a judgment. This judgment is binding between all the parties who were in that cause. It is binding between all of those parties in every place, in every forum. But can it be said that he found that the claims were not for "current expenses"? I think not.

[4] Did the Legislature have the power, in the provision above quoted, to make such claim the basis for the statutory lien? A railroad was for sale; it was a public utility; it was liable to supervision and control by the state of Texas. That state saw fit to provide that any one might buy the railroad, all of its properties, but should not reincorporate, or secure the right to do business in Texas as a common carrier, unless such purchaser should agree to pay a certain portion of the indebtedness that might exist against it, and particularly to pay for such "current expenses of operation" as had occurred within two years of such receivership sale. That was a provision by the law-making power. Its acceptance was not forced upon any one. Any purchaser of a railroad could advantage himself of the same, and agree to do what the law demanded, if he wished to possess a charter. If he did this, then the open account—the unsecured claims, the claims that were not preferenced under the equity rule, the claims for the current expenses of operation for two years—became lienable, and the property which he bought stood charged with their payment. The finding of the state court that the advances were for "current expenses of operation" was not antagonistic to the master's finding. Each could be correct.

My opinion is that this legislation by the state was not in contravention of the United States jurisdiction. I. & G. N. Ry. Co. v. Anderson County, 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807. The claims that had been presented by intervention in the United States court were held to be valid debts there, but not subject to preference, as ex-

plained, and this new legislation merely secured an indebtedness that already existed. It is no answer to say that the order thereon in 1912 by the master, or by the District Court, was ruled by the law that existed at that time, because the pleadings do not justify such answer. The interventions were filed in 1908 and were never amended. A law passed two years afterward was not in contemplation.

[5] 2. Neither does the retention of jurisdiction by the United States District Court go further than to reserve the right to do with the interventions what it did do with them after the sale;' and, having acted thereon, it may not now prevent the state court from going forward under this new lien. This sale is not an interference by the state courts with the jurisdiction of the United States court.

[6] 3. The mortgagee, who owned the lien under the foreclosure by the United States court, took the mortgage subject to the burden of the state statute. Such taking would not deprive it of its right to be heard in a state court before that court would take from it any property rights, Central Trust Co. v. Anderson (U. S. Supreme Court, April, 1925) 45 S. Ct. 427, 69 L. Ed. ——, Palestine Shop Case. But that is not this story.

A preliminary injunction is refused.